IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JOHN MOES                    *
    Petitioner,
    v.                             *      CIVIL NO. RWT-04-2959

WARDEN STEPHEN M. DEWALT           *
CASE MANAGER DAVID A. HOLLER
    Respondents.
                        ******

## MEMORANDUM OPINION

Robert John Moes, an inmate formerly confined at the Federal Correctional Institution in Cumberland, Maryland, filed this 28 U.S.C. § 2241 Petition for habeas corpus relief, seeking immediate relief in the form of reassignment and placement to a Community Corrections Center ("CCC") in Grand Rapids, Michigan.[1]  Respondents have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, arguing that Petitioner's case is subject to dismissal for the failure to exhaust all available remedies prior to filing this Petition.[2]  (Paper No. 5). Petitioner has filed an Opposition response.[3]  (Paper No. 8).  The case may be determined on the pleadings and without oral hearing.  *See* Local Rule 105.6.  (D. Md. 2004).

---

[1]     Petitioner also alleges that: FCI-Cumberland staff were "impeding his access to the courts;" he was improperly placed in the Inmate Financial Responsibility Program "Refuse" status; and a meeting with his staff psychologist was videotaped without his authorization.  (Paper No. 1).

[2]     Petitioner filed a Motion to Deny Any and All Requests for Extensions fourteen days after the Court directed Respondents to file a show cause answer.  (Paper No. 4).  The motion shall be denied as moot.

[3]     Petitioner filed supplemental exhibits in support of his Opposition.  (Paper No. 10).  In addition, he filed a Motion to Appoint Counsel, a Motion to Expedite Hearing, and a Motion for Special Master.  (Paper Nos. 9, 11, & 12).   For reasons to follow, these motions shall be denied.

## I.  Standard of Review

### Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal conclusions or pleaded facts, Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices.  See United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

### Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See* Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. Anderson, 477 U.S. at 256.

In Celotex, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Celotex, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting Seago v. North Carolina Theatres, Inc., 42 F.R.D. 627, 632 (E.D.N.C. 1966), aff'd, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

3

## II.  Analysis

There is no dispute that in January of 2001, Petitioner was convicted of two counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) in the United States District Court for the Western District of Michigan.  See United States v. Moes, Criminal No. 00-186 (W.D. Mich. 2000).[4]  He was sentenced by United States District Judge Robert Holmes Bell to a 72-month term to be served in the U.S. Bureau of Prisons ("BOP"), with three years supervised release, and ordered to pay a $200.00 assessment and a $1,000.00 fine.  (Id.).

Petitioner complains that since remanded into BOP custody he has been in five different institutions and has experienced conduct by BOP staff that was "shocking to the conscience."   In this case his complaint focuses on the alleged failure of BOP staff at FCI-Cumberland to promptly submit his application for CCC placement well in advance of his February 6, 2005 eligibility date.[5]

According to the record, Petitioner was designated for assignment at FCI-Cumberland and received at that institution on June 14, 2004. (Paper No. 5, Ex. 1 at Greene Decl. & Attach. A).  His full-term release date is August 3, 2006, but his projected release date, factoring in good conduct time, is November 6, 2005.  (Id.).

Ten days after his arrival at FCI-Cumberland, Petitioner's unit team conducted his initial classification review. (Id., Ex. 2 at Holler Decl.).  At that time Petitioner was informed that the team would review his CCC placement on December 14, 2004, during his next scheduled program

---

[4]      Petitioner uses the alias of "Robert John White." See United States v. Moes, Criminal No. 00-cr-0186-RHB (W.D. Mi. 2000)

[5]      As of that date, Petitioner will have served all but 10% of his sentence, thus making him eligible for CCC placement.  He claims that it is a well-known fact that when a CCC request is submitted, it takes months to process the request and even longer to secure a bed at a CCC.

review.[6] _Id._  According to Respondent Holler, Petitioner's Medical/Psychological Pre-Release Evaluation ("Med-19"), which must be completed for purposes of CCC placement consideration, was initiated on August 27, 2004, and completed on September 22, 2004. (<u>Id.</u>).

In accordance with BOP Program Statement ("P.S.") 7310.04, <u>Community Corrections Center (CCC) Utilization and Transfer Procedure</u>, final and specific release preparation plans, including decisions regarding CCC referrals, are established eleven to thirteen months before an inmate's projected release date. (<u>Id.</u>, Ex. 2 at Attach. B).  According to Respondents, prison staff make recommendations for CCC placements based on assessment of each inmate's need for services, public safety, and the necessity of the BOP to manage its inmate population responsibly. (<u>Id.</u>, Ex. 2 at Holler Decl.).  CCC placement is a program element and is not used as a reward for good institutional behavior.  Respondent Holler states that a number of factors are weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources. (<u>Id.</u>).  Other factors to be considered include, but are not limited to, a history of escape and non-participation in the Inmate Financial Responsibility Program. (<u>Id.</u>).  Respondents indicate that Petitioner is subject to program review and CCC evaluation as provided for by BOP statements. (<u>Id.</u>).  They assert that the review process will be completed and Petitioner will know the details of his halfway house designation well before his earliest eligibility date in 2005.[7] (<u>Id.</u>).

Respondents claim that Petitioner did not file an administrative remedy regarding his request to have his CCC placement reviewed immediately. (Paper No. 5, Ex. 1, Greene Decl.).  They further assert that while he filed a number of administrative remedies since his June 14, 2004 arrival at FCI-

---

[6]     The program review date was changed to December 2, 2004. (Paper No. 5, Ex. 2 at Holler Decl.).

[7]     This assertion is contained in Respondents' dispositive motion.  It now appears that Respondents did in fact provide these details to Petitioner prior to his eligibility date. (Paper No. 12).

Cumberland, none of those remedies involve claims that FCI-Cumberland staff are violating his right of access to the courts and other remedies, concerning the remaining allegations included in his petition, had not fully exhausted. (Id., Ex. 1, Greene Decl. & Attach. C).

Petitioner opposes Respondents' dispositive motion, complaining that Respondents operate under the mistaken belief that they have no authority to designate him to a CCC for more than the final 10% of his term of imprisonment. (Paper No. 8). He claims that: the BOP has been misinterpreting 18 U.S.C. § 3624(c);[8] BOP inmates can be placed in a CCC or halfway house for more than the 10% period; and the "kind of controlled exposure to the community is entirely consistent with the meaning of imprisonment under statute." (Id.). Petitioner again complains that Respondents have adopted a "pass the buck" attitude in refusing to submit his halfway house paperwork so that he could be placed in a CCC three months before his eligibility date. (Id.).

In addition, Petitioner claims that the BOP Remedy Program is farcical; that in September of 2004, Respondent Dewalt issued a memo in which he claimed that Petitioner had abused the remedy process and directed that Petitioner not be issued any additional administrative remedy forms until his current remedies had been addressed; and that as he has filed a § 2241 petition, the exhaustion requirements of 42 U.S.C. § 1997e(a) are inapplicable to his case. (Id.) He asserts that the only issue he wishes to litigate or challenge is the location of his confinement.[9] (Id.).

_____

[8]      18 U.S.C. § 3624(c), provides that shortly before the expiration of federal prisoners' sentences, the BOP must place the prisoners under conditions which will allow them an opportunity to adjust to re-entry into the community. 18 U.S.C. § 3624(c). This pre-release custody is limited in duration to the last ten percent of the prisoners' sentences, not to exceed six months. (Id.). Section 3624(c) provides that:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

[9]      The undersigned observes, however, that in his submission of additional exhibits, Petitioner asserts anew that he was improperly placed on Inmate Financial Responsibility Program "Refuse" status and

Challenges to the manner, location, or conditions of the execution of a prisoner's sentence are properly raised under 28 U.S.C. § 2241. See Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)(per curiam); United States v. Miller, 871 F.2d 488, 490 (4th Cir.1989); Monahan v. Winn, 276 F.Supp.2d 196, 204 (D. Mass. 2003).   The Fourth Circuit has not directly held that the PLRA's exhaustion requirements under 42 U.S.C. § 1997e(a) are inapplicable to habeas proceedings, but has concluded that the PLRA's filing fee requirement is not.[10] See Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir. 1997).   In any event, federal prisoners challenging the execution of their sentence must exhaust administrative remedies prior to seeking habeas review under 28 U.S.C. § 2241. See Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir.1994).

Whether or not Petitioner's claims are subject to 42 U.S.C. § 1997e(a) requirements, the uncontroverted evidence shows that Petitioner did not file a remedy with regard to his primary claim concerning CCC assignment and did not fully exhaust his remedies with regard to his remaining tertiary claims.   (Paper No. 5, Ex. 1 at Attach. B; Ex. 2 at Attach. C).   The undersigned judge therefore concludes that the Petition is subject to dismissal for the failure to satisfy administrative exhaustion requirements.

Alternatively, the undersigned finds that habeas corpus relief in the form of an injunction is not warranted here.   First, the record shows that Petitioner Moes was indeed transferred to the Community Alternatives Program in Grand Rapids, Michigan in June of 2005. See Moes v. Dewalt,

---

that the Unit Manager has made misleading representations and taken unauthorized actions regarding Petitioner's fine disbursal payments.  (Paper No. 10).

[10]     The Supreme Court has interpreted the language of 42 U.S.C. § 1997e(a) broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Civil Action No. RWT-05-1541 (D. Md. 2005).  Therefore, his request for relief has been rendered

moot in view of his move.  Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Beyah v. Coughlin,

789 F.2d 986, 988 (2d Cir. 1986); Marrie v. Nickels, 70 F.Supp.2d 1252, 1258 (D. Kan. 1999).

Moreover, habeas corpus relief is not otherwise warranted.  Petitioner's conviction and 72-

month sentence subject him to placement in a BOP prison wherever the BOP, in its discretion,

designates his sentence is to be served.   Unlike the case of Tipton v. Federal Bureau of Prisons, 262

F.Supp.2d 633 (D. Md. 2003), which is relied on and often cited by Petitioner, Judge Bell

indisputably did not recommend that Petitioner serve his 72-month sentence at a residential

community center as a substitute for imprisonment.  (Paper No. 5, Ex. 1 at Attach. B).  Further,

while Petitioner is obviously dissatisfied with the timetable in which he was reviewed, approved,

and placed in a CCC facility,  it is clear that he was not denied such assignment.  Respondents

correctly observe that Petitioner has no protected liberty interest or expectation to remain at or to be

transferred to any particular form of housing assignment, such as CCC placement, while serving his

72-month sentence.[11]  See Meachum v. Fano, 427 U.S. 215, 225 (1976).  Finally, there is no showing

that Respondents' conduct was constitutionally violative.  Petitioner received his Med-19 evaluation,

was scheduled for program review within the suggested time period provided for under P.S. 7310.04,

and did in fact receive his review on December 2, 2005.[12]  (Paper No. 12).

### III.  Conclusion

For the aforementioned reasons, Respondents' Motion to Dismiss or for Summary Judgment

shall be granted and the Petition is hereby dismissed.  In light of this decision, Petitioner's Motions

---

[11]     Petitioner's protestations to the contrary, he has no recognized liberty interest in earning the minimum wage he claims he would be garnering if assigned to a CCC.

[12]     According to Petitioner, on December 2, 2005, his Unit Team: scheduled him for a "put-in" for four to five months; awarded him 149 days; and scheduled him for a transfer to the CCC in Grand Rapids, Michigan in June of 2005.  (Paper No. 12).

to Expedite Hearing and to Assign a Special Master shall be denied.   In addition, because the

undersigned finds no exceptional circumstances warranting the appointment of counsel, Petitioner's

Motion to Appoint Counsel is hereby denied.   A separate Order follows.

Date: _August 26, 2005_          _____
                                 Roger W. Titus
                                 United States District Judge